**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

_____

|  |  |  |
|---|---|---|
| SYMBOLOGY INNOVATIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:17-cv-00086-AWA-RJK |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| LEGO SYSTEMS, INC. and JOHN DOE, | ) | |
| | ) | July 21, 2017 |
| Defendants. | ) | |
| | ) | |
| | ) | |

_____

**LEGO SYSTEMS, INC.'S REPLY IN FURTHER SUPPORT OF**
**SUPPLEMENTAL MEMORANDUM**
**IN SUPPORT OF MOTION TO TRANSFER**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.    ARGUMENT ..............................................................................................................4

    A.    Transfer Is Required under § 1406(a) ...........................................................4

        1.    Symbology has not sufficiently alleged that LSI has committed acts of infringement in this District ......................................... 4

        2.    This Court should not adopt the Raytheon dictum, and Symbology has offered no alternative basis for venue ................................................ 7

        3.    LSI lacks a regular and established place of business in this District .................................................................................................12

    B.    This Case Should Be Transferred to Connecticut, Where It Could Have Been Brought ................................................................................................14

    C.    Alternatively, the Court Should Transfer This Case to the District of Connecticut under § 1404(a) in the Interest of Justice Because Venue is Inconvenient in This District ...........................................................................15

        1.    Symbology's choice of venue requires minimal consideration ...............16

        2.    Convenience of the parties and witnesses favors transfer to the District of Connecticut ...........................................................................18

    D.    Symbology Had No Basis to Sue John Doe .......................................................21

III.    CONCLUSION ..........................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Cyanamid Co. v. Nopco Chem. Co.*,
   388 F.2d 818 (4th Cir. 1968) ............................................................................... 11

*Carbide & Carbon Chemicals Corp. v. United States Industrial Chemicals*,
   140 F.2d 47 (4th Cir. 1944) ................................................................................... 8

*Chadeloid Chem. Co. v. Chicago Wood Finishing Co.*,
   180 F. 770 (S.D.N.Y. 1910) (Learned Hand, J.) ............................................. 10, 13

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
   No. 2:15cv21, 2017 U.S. Dist. LEXIS 90728 (E.D. Va. June 7, 2017) ............. 7, 12

*In re Cordis Corp.*,
   769 F.2d 733 (Fed. Cir. 1985) ............................................................................... 9

*In re: Cray Inc.*,
   No. 17-00129 (Fed. Cir. July 17, 2017) ............................................................... 2

*Funnelcap, Inc. v. Orion Indus., Inc.*,
   392 F. Supp. 938 (D. Del. 1975) .......................................................................... 6

*Garcia v. United States*,
   469 U.S. 70 (1984) ............................................................................................. 11

*Global Touch Solutions, LLC v. Toshiba Corp.,* 109 F. Supp. 3d 882 (E.D. Va.
   2015) ............................................................................................................. 16, 18

*Instrumentation Specialties Co. v. Waters Associates, Inc.*,
   No. 76 C 4340, 1977 WL 22810, 1977 U.S. Dist. LEXIS 13508 (N.D. Ill. Oct.
   12, 1977) .......................................................................................................... 11

*Intercarrier Communications, LLC v. Glympse, Inc.*,
   No. 3:12-CV-767, 2013 U.S. Dist. LEXIS 113572 (E.D. Va. Aug. 12, 2013) ...... 20

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ............................................................................. 17

*Koh v. Microtek Int'l, Inc.*,
   250 F. Supp. 2d 627 (E.D. Va. 2003) ................................................................. 19

*Logantree Lp v. Garmin Int'l, Inc.*,
No. SA-17-CA-0098-FB, 2017 U.S. Dist. LEXIS 99925 (W.D. Tex. June 22, 2017)..........................................................................................................................8

*Lycos, Inc. v. TiVo, Inc.*,
499 F. Supp.2d 685 (E.D. Va. 2007).............................................................................18

*Mylan Labs., Inc. v. Akzo*,
N.V., 2 F.3d 56 (4th Cir. 1993)......................................................................................12

*PhotoCure ASA v. Dudas*,
622 F. Supp. 2d 338 (E.D.Va. 2009)............................................................................10

*Raytheon Co. v. Cray, Inc.*,
No. 2:15-CV-015454-JRG, 2017 U.S. Dist. LEXIS 100887, 2017 WL 2813896 (E.D. Tex. June 29, 2017) ........................................2, 4, 7, 9, 10, 11, 12, 13, 14, 17

*Regents of University of Cal. v. Howmedica, Inc.*,
No. 75-1174, 1976 U.S. Dist. LEXIS 16289 (D. Md. 1976)...................................20

*Shapiro v. Ford Motor Co.*,
359 F. Supp. 350 (D. Md. 1973) ..............................................................7, 12, 17

*Wurth Elecs. Midcom, Inc. v. Digital Light, LLC*,
No. CVI 10-1002, 2010 U.S. Dist. LEXIS 72333 (D.S.D. July 19, 2010)...........................17

## Statutes

28 U.S.C. § 1391(c) ..........................................................................................................11

28 U.S.C § 1400(b) ....................................................................................1, 2, 4, 8, 9, 11, 12

28 U.S.C. § 1404(a) ..............................................................3, 15, 16, 17, 20, 21, 22

28 U.S.C. § 1406..........................................................................................................20

28 U.S.C. § 1406(a) ....................................................................1, 9, 15, 17, 20, 21, 22

LEGO Systems, Inc. ("LSI") respectfully submits this Reply to Symbology Innovations, LLC's ("Symbology") Amended Response to LEGO's Supplemental Memorandum Regarding LEGO's Motion to Transfer (ECF No. 34, "Response") and in further support of transfer of this action as set forth in LSI's Supplemental Memorandum in Support of Motion to Transfer (ECF No. 31, "Opening Memorandum").

## I.  INTRODUCTION

In its Opening Memorandum, LSI demonstrated that this patent action is improperly venued in this District and should be transferred under 28 U.S.C. § 1406(a) to the District of Connecticut, where it could have been brought.[1]  As LSI explained, under the Supreme Court's recent decision in the *TC Heartland* case, venue in this patent action is proper only in a district where the defendant resides or in a district where the Defendant has both "committed acts of infringement and has a regular and established place of business."  (Opening Memorandum at 6 (citing 28 U.S.C § 1400(b)).)  LSI demonstrated that it does not reside in this District (*id.*), and further demonstrated both that it had not been alleged to have committed acts of infringement in this District and that it did not have a regular and established place of business in this District (*id.* at 6–8).  LSI also explained that, for purposes of determining whether venue is proper as against LSI, Symbology's allegations against co-defendant John Doe must be disregarded.  (*Id.* at 8–10.)

In its Response, Symbology has conceded that the *TC Heartland* decision limits venue to those bases set forth in § 1400(b), that LSI does not reside in this District, and that venue over LSI must be established independently of venue over John Doe.  (Response at 1–2.)  Indeed, Symbology has conceded that its claims against John Doe should be dismissed.  (*Id.* at 22.)

---

[1] In its Opening Memorandum, LSI argued that the action should be dismissed or, alternatively, transferred.  LSI withdraws its request that the action be dismissed and requests the Court to transfer the action to the District of Connecticut.

Symbology nevertheless argues this Court should retain venue over LSI under the second prong of § 1400(b), urging the Court to adopt a liberal four-factor test recently articulated by the Honorable Rodney Gilstrap of the Eastern District of Texas in dictum for determining whether a defendant has a "regular and established place of business" in the forum.  (Response at 1, 9–10, 10–11 (citing *Raytheon Co. v. Cray, Inc.*, No. 2:15-CV-015454-JRG, 2017 WL 2813896, at *11– 14, 2017 U.S. Dist. LEXIS 100887, at *32–38 (E.D. Tex. June 29, 2017)).)  Though it seeks adoption of the *Raytheon* test in this case, Symbology does not argue that its FAC alleges a sufficient basis for venue over LSI under that test.  Rather, Symbology urges the Court to permit wide-ranging discovery of LSI, so Symbology can attempt to establish sufficient facts to allege a basis for venue in a proposed second amended complaint.  The Court should decline Symbology's request for at least the following reasons, as further explained below:  (1) the *Raytheon* test concerns only the "regular and established place of business" sub-prong of the venue statute, but Symbology concedes it must also allege acts of infringement in this District, and it has failed to do so; (2) the *Raytheon* test is dictum that is inconsistent with the requirements of the controlling statute,[2] and Symbology makes no argument that it can meet the actual requirements of the statute; and (3) even if the *Raytheon* test were applied, venue over LSI would be improper.

In its Response, Symbology alternatively argues that, if venue is improper in this District, the case should be transferred to the District of Delaware.  However, having chosen to bring its action in an improper district, Symbology has forfeited the plaintiff's right to select venue.  The Court should therefore reject Symbology's request and transfer the action to the District of

---

[2] Cray, Inc., the defendant in the *Raytheon* case, has petitioned the United States Court of Appeals for the Federal Circuit for a writ of mandamus.  *See In re: Cray Inc.*, No. 17-00129 (Fed. Cir. July 17, 2017).  The appellate court has shown interest in the petition and directed Raytheon to respond.

Connecticut, where it also could have been brought and as LSI's Motion requests. It is undisputed that LSI has a regular and established place of business in Connecticut. Moreover, the allegations in the FAC meet the requirement, at this stage of the case, with respect to "acts of infringement."[3]

Moreover, were there any doubt that venue in this District is improper, rather than grant Symbology broad discovery, the Court should instead transfer this case to the District of Connecticut under § 1404(a). As LSI also demonstrated in its Opening Memorandum, even if venue were proper in this District, the action should be transferred under § 1404(a) for the convenience of the parties and the witnesses and in the interests of justice. (Opening Memorandum at 11–19.) In Response, Symbology argues that LSI failed to meet its purported burden to demonstrate that the relevant factors "strongly" favor transfer. (Response at 13.) However, because Symbology elected to bring suit in a forum with which this case has no special connection, the question is only whether the factors, on balance, point to another forum. Because LSI showed in its Opening Memorandum that this is the case, and Symbology has failed to rebut that showing, transfer is alternatively warranted under § 1404(a).

Finally, in addition to LSI's motion to transfer, the Court asked the parties to address the propriety of Symbology's allegations against co-defendant John Doe. Symbology has conceded that its claims against Doe should be dismissed because it cannot serve Doe or even locate him, but insists its claims were properly brought because it expected to learn his address in discovery. Symbology's explanation for this belief, however, is inadequate.

---

[3] LSI denies infringing the Asserted Patents, directly or indirectly. However, Symbology concedes that venue does not turn on the merit of its allegations. (*See* Response at 10.)

## II.    ARGUMENT

### A.  Transfer Is Required under § 1406(a).

Symbology concedes that, to support venue in this District, it must establish *both* that LSI has committed acts of infringement in this District *and* that LSI has a regular and established place of business in this District.  (Response at 10.)  It has established neither.

### 1.  Symbology has not sufficiently alleged that LSI has committed acts of infringement in this District.

Though Symbology urges the Court to permit venue discovery under the *Raytheon* dictum so it can fish for a factual basis to allege LSI has a regular and established place of business in this District, Symbology has failed even to allege sufficient "acts of infringement" in this District as also required under 28 U.S.C. § 1400(b).  Symbology's allegations fall short for two independent reasons.

First, Symbology relies entirely on its allegation that John Doe is a resident of the Commonwealth of Virginia who resides in this District to support its argument.  Indeed, its entire argument concerning the "acts of infringement" requirement — save only its contention that the Court may consider allegations of infringement rather than acts — is as follows:

> Symbology's FAC clearly alleges that LSI has conducted acts of infringement by inducing John Doe, a Virginia resident, to use his/her portable electronic device to detect symbology included in the QR Codes display on LSI's Products, process the symbology contained in the QR Code and receive additional information related to the Selected Products.  FAC at ¶¶ 7, 34-36, 53-56, 78-80, 103-105, and 128-130.  Symbology's FAC also clearly alleges that LSI has induced infringement in the Commonwealth of Virginia. *Id.* at ¶ 7.

(Response at 10.)  However, one will scour the FAC in vain for an allegation that Doe has actually *done* anything in this District except reside.  Though there are many allegations that Doe infringed in Virginia, the Commonwealth of Virginia includes two different federal districts, and Symbology has failed to allege that Doe engaged in any infringing activities in *this* District, the

Eastern District of Virginia.  (*See* FAC ¶¶ 7, 33–36, 53–56, 78–81, 103–06, and 128–31.) Symbology has not alleged that Doe or any other customer infringed the Asserted Patents in this District, nor that LSI induced Doe or any other customer to infringe in this District.  (*See id.* ¶ 7 ("Defendant LSI . . . is inducing infringement within the Commonwealth of Virginia.  Defendant John Doe resides in this District.").)

Second, even if one considered Symbology's allegation that LSI "is inducing infringement within the Commonwealth of Virginia" to relate somehow to this District specifically, that conclusory allegation is an insufficient basis on which to exercise venue over LSI.  As LSI demonstrated in its Opening Memorandum, any internal testing it might have done of QR codes would have occurred only in Connecticut.  The contention that LSI induced anyone in Virginia to do anything relies on Symbology's allegations concerning retail stores that are operated in Virginia by an affiliate, LBR.  (*See* Opening Memorandum at 7–8.)  Symbology has previously admitted that the retail stores are operated by LBR (ECF No. 21 at 2 ("LSI, through its subsidiary Lego Brand Retail . . . operates at least three stores in this District . . . .")), and again concedes the point in its Response (Response at 15 (discussing LSI's "establishing places of business in the EDVA through its subsidiary Lego Brand Retail")).  Accordingly, Symbology's conclusory allegations in the FAC regarding LSI's activities in Virginia in fact concern the actions of non-party LBR and so are irrelevant to venue over LSI.  (*See* Opening Memorandum at 7–8.)

Instead of presenting any factual basis for its contention that LSI, as distinct from LBR, engaged in infringing activities in this District, Symbology urges the Court to ignore the evidence submitted by LSI and insists that it may instead rely on the conclusory allegation in its FAC that LSI induced infringement in Virginia, however unsupported and incorrect it may be.

(*See* Response at 10 (citing *Funnelcap, Inc. v. Orion Indus., Inc.*, 392 F. Supp. 938, 943 (D. Del. 1975)).)  Symbology's position is not, however, supported by the *Funnelcap* case on which it relies.  In *Funnelcap*, the court considered a transfer motion brought by the defendant, which sought to establish that venue would have been proper in the Central District of California based on allegations of infringement by another entity in that forum for which the defendant denied responsibility.  Distinguishing "an issue relating to the merits of the litigation," which may be deferred in reliance on factual allegations, the court recognized that "the issue of whether an arguably infringing act has occurred within the forum" requires "proof by the plaintiff before compelling defendants to litigate on the merits."  *Funnelcap, Inc. v. Orion Indus.*, 392 F.Supp. 938, 943 (D. Del. 1975).  In that case, because the defendant was "not in fact responsible for an accused act in the [transferee] forum district," venue in that forum was deemed *improper*.  *Id.* So, too, here, the issue is not whether the actions on which Symbology relies to support venue (*e.g.*, FAC ¶ 39 ("LSI employees in Connecticut or Virginia have (or have arranged for others to) test, detect, and process QR Codes imprinted on LSI's advertisements and/or packaging for Selected Products")) induced infringement (a merits question), but whether LSI, which has no employees in Virginia, is responsible for actions in this District of LBR.  Because LSI does not base its venue challenge on the merits of the case, but instead contends that it is not responsible for actions, even if assumed infringing, in this District, Symbology's allegations alone are insufficient.  *Funnelcap*, 392 F.Supp. at 943.  (*See* Memorandum at 7; Quaglia Decl. ¶ 4; Nielsen Decl. ¶ 6 (averring that LBR, not LSI, operates retail stores in Virginia).)

In short, Symbology attempts to impute LBR's activities to LSI without justification. Ignoring the separation of finances, assets, records, and officers between LSI and LBR,

Symbology bases its venue arguments against LSI entirely on the activities of LBR.[4]  It argues: "LSI: (1) operates at least three stores in this District (allegedly through its subsidiary [LBR]), [and] (2) sells accused products through these stores . . . ."  (Response at 4.)  Because the actions of LBR cannot be attributed to LSI, however, this attempt should fail.  *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2017 U.S. Dist. LEXIS 90728, at *10–11 (E.D. Va. June 7, 2017) ("The presence of independent dealers in a district does not qualify as a 'regular and established place of business.'") (citing *Holub Indus., Inc. v. Wyche*, 290 F.2d 852, 853–56 (4th Cir. 1961)); *see also Shapiro v. Ford Motor Co.*, 359 F. Supp. 350, 357 (D. Md. 1973).  Symbology's attempt to ignore the distinct corporate forms should be rejected.  Symbology alleges no other infringing acts in this District.[5]

### 2. This Court should not adopt the *Raytheon* dictum, and Symbology has offered no alternative basis for venue

Even if Symbology had alleged acts of infringement in this District, it has not alleged that LSI has a regular and established place of business in this District.  To the contrary, implicitly admitting that it presently has no factual basis to support such an allegation, Symbology urges the Court to adopt the four-factor test announced in *Raytheon*, and then repeatedly admits that facts necessary for its success with respect to each factor, if any, can be secured only through venue specific discovery.  (Response at 10–12.)  Symbology makes no argument and identifies no facts supporting this sub-prong of § 1400(b) if the Court rejects the *Raytheon* test.

---

[4] Though Symbology relies on Doe's actions in Virginia in an effort to establish infringing actions in Virginia by LBR (which it attempts to impute to LSI), Symbology concedes that Doe's actions, of themselves, do "not impact this Court's determination on whether or not venue is proper in this District for Symbology's claims against LSI."  (Response at 2.)

[5] In an attempt to establish that LSI has a regular and established place of business in this District, Symbology asserts that LSI is registered to do business in Virginia and has hosted events here. However, these allegations do not concern acts of infringement.

This, of course, is not surprising, as LSI demonstrated in its Opening Memorandum that LSI does not have "a regular and established place of business in this District" in the ordinary sense of those words. (Opening Memorandum at 6.) Contrary to Symbology's strawman, LSI did not argue a "regular and established place of business" requires a principal office. Rather, LSI "does not have <u>any</u> corporate <u>presence</u> in the Commonwealth of Virginia." (Quaglia Decl. ¶ 10 (emphasis added).) Though Symbology accuses LSI of relying on "cherry-picked" facts, it is hard to imagine a more sweeping assertion of fact. Similarly, LSI averred that LBR is a distinct corporate entity with separate finances, assets, records, and officers. (Nielsen Decl. ¶¶ 4, 5.) Unless Symbology is permitted, somehow, under the *Raytheon*'s four-factor test, to rely on LBR's physical presence in Virginia, it offers no basis for meeting the requirement of the statute. Symbology states, for example, that LSI hosts events in Virginia, but fails to identify any, let alone to explain how such ephemeral activities could be the equivalent of a "<u>regular and established place of business</u>." (Response at 4.)[6] Nor does the fact that LSI has registered to conduct business in Virginia with an appointed representative for service render venue proper as to LSI. *See Logantree Lp v. Garmin Int'l, Inc.*, No. SA-17-CA-0098-FB, 2017 U.S. Dist. LEXIS 99925, at *4 (W.D. Tex. June 22, 2017) ("The fact that [defendants] are authorized to do business in Texas is not controlling and will not establish the [§ 1400(b)] requirement.") (quoting *Gaddis v. Calgon Corp.*, 449 F.2d 1318, 1320 (5th Cir. 1971)); *see also Carbide & Carbon Chemicals Corp. v. United States Industrial Chemicals*, 140 F.2d 47, 50 (4th Cir. 1944)

---

[6] The Court directed the parties to "brief the venue issues before the Court comprehensively. Arguments from other filings should not be incorporated by reference." (ECF. No. 30, at 1 n.1.) Symbology should therefore be deemed to have abandoned its earlier contention that a certain printout listed events attributable to LSI in Virginia (*see* ECF No. 21 at 6 (citing ECF No. 21-2)) in the face of LSI's refutation that those events were hosted by unaffiliated third-parties or took place outside of Virginia (*see* ECF No. 23 at 3 n. 2).

(affirming dismissal for improper venue, where defendant simply qualified to do business and appointed an agent to accept service of process in the forum).

In fact, short of arguing that discovery is necessary to establish venue under *Raytheon*'s four-factor test, Symbology makes no argument whatsoever to satisfy the "regular and established place of business requirement." Therefore, if this Court declines to adopt that test, it should summarily transfer the case under § 1406(a). Moreover, the Court should decline to adopt that test for at least the following reasons.

First, the test is announced in dictum and has never been applied. *See Raytheon*, 2017 U.S. Dist. LEXIS 100887, at *37 n.13 ("Acknowledging that the Parties in this case did not have the benefit of the guideposts discussed above, and further recognizing that the holding in *Cordis* is alone adequate to support the result herein, the Court declines to expressly apply the factors above in this particular case; although, the Court is satisfied that had it done so, the result would remain the same.").[7] (*Contra* Response at 10 ("Using these factors, Judge Gilstrap found that venue was proper in the Eastern District of Texas because, using the four-factor test, Cray had a 'regular and established place of business in [that] District.'").)

Second, the four-factor test is inconsistent with the plain meaning of the controlling statute. Section 1400(b) requires a defendant to have a "regular and established place of business" in the forum district. The test, in contrast, is far broader. Alone among the four factors, the first factor "considers the extent to which a defendant has a physical presence in the district, including but not limited to property, inventory, infrastructure, or people." *Raytheon*, 2017 U.S. Dist.

---

[7] Indeed, the Court's holding in *Raytheon* was that venue is proper under *In re Cordis Corp.*, 769 F.2d 733 (Fed. Cir. 1985). *Raytheon*, 2017 U.S. Dist. LEXIS 100887, at *37. The facts in *Raytheon*, however, which involved a defendant with a sale representative who resided permanently in the forum at a fixed physical location, were indeed close to the facts in *Cordis*. Recognizing that the present case is quite distinguishable, Symbology makes no arguments under *Cordis* in its Response.

LEXIS 100887 at *32.  Even this factor is framed far too broadly, moreover, as it considers, *e.g.*,

inventory maintained in the district, without regard to whether the inventory is merely

warehoused, for example, by another entity for reasons unrelated to the defendant's business and

perhaps beyond its control.  The other three factors, moreover, then invite consideration of other

criteria unrelated to the defendant's physical presence in the district.  The second factor, for

example, considers "the extent to which a defendant represents, <u>internally or externally</u>, that it

has a presence in the district."  *Id.* at *33–34 (emphasis added).  Leaving aside whatever

evidentiary value might be found in an admission to having a physical presence in the district

under the first factor,[8] creating a distinct second factor is unwarranted.  If, for example, a

defendant adopted a local phone number for customer queries in order to give the impression of

being a local business, that might support personal jurisdiction for a claim arising out of reliance

on that misimpression, but it cannot establish a "regular and established place of business" in the

district if, in fact, the phone were based elsewhere.  The third factor would consider "the extent

to which a defendant derives benefits from its presence in the district, including but not limited

to sales revenue."  *Id.* at *35.  To the extent this factor requires a *physical* presence in the district,

it adds nothing to the first factor; conversely, however, to the extent merely deriving revenue

from the district is deemed a form of "presence" in the district, this factor ignores the statutory

requirement that the "presence" be not only regular and established, but also, critically, a "<u>place</u>

of business."  This Court should not adopt a test for determining the scope of the statute that is

inconsistent with its plain meaning.  *See PhotoCure ASA v. Dudas*, 622 F. Supp. 2d 338 (E.D.Va.

---

[8] The 1910 case *Raytheon* cites as support for the second factor suggests nothing more than that
the admission of a physical office of the defendant is evidence of such.  *See Chadeloid Chem. Co.
v. Chicago Wood Finishing Co.*, 180 F. 770 (S.D.N.Y. 1910) (Learned Hand, J.) (finding that
defendant's business "took place regularly at one place, which was permanently established for
the purpose" based on various admissions).

2009) (refusing to construe a statute contrary to its plain meaning); *Garcia v. United States*, 469 U.S. 70, 75 (1984) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in 'rare and exceptional circumstances' . . . .") (citation omitted); *Am. Cyanamid Co. v. Nopco Chem. Co.*, 388 F.2d 818, 820 (4th Cir. 1968) ("[Section 1400(b)] clearly requires that venue be laid where 'the defendant * * * has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant."). Nor, moreover, does the case on which *Raytheon* relies support the expansive nature of that factor as urged by Symbology. *Instrumentation Specialties Co. v. Waters Assocs., Inc.,* No. 76 C 4340, 1977 WL 22810, at *6, 1977 U.S. Dist. LEXIS 13508, at *16 (N.D. Ill. Oct. 12, 1977) (citing the substantial volume of sales in the district merely as support for the conclusion that "a defendant engaged in such substantial activities with so large a complement of employees [in the district] cannot avoid venue simply by not renting or owning a formal office and having all its employees coordinate their activities by phone or personal meetings"). Finally, the fourth factor considers "the extent to which a defendant interacts in a targeted way with existing or potential customers, consumers, users, or entities within a district, including but not limited to localized customer support, ongoing customer relationships, or targeted marketing efforts." *Raytheon*, 2017 U.S. Dist. LEXIS 100887 at *35. Again, to the extent this factor considers local physical interactions, it adds little to the first factor. However, to the extent this factor considers activities outside the forum that are merely targeted towards the forum, it mixes personal jurisdiction with venue. *See id.* at *36 n. 11. *Raytheon* acknowledged that "the regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the 'doing business' standard of the general venue provision, 28 U.S.C. § 1391(c)," *id.* at *36 n.

11 (citation omitted), but nevertheless concluded that considerations relevant to personal jurisdictional analysis may support a finding of venue. This is inconsistent with the plain language of the statute. While it is true that "'ongoing' contracts governed by the law of the forum state, with a company based in the forum state" may create sufficient minimum *contacts* for the exercise of personal jurisdiction, *see id.*, this does not suggest that such *contacts* "weigh in favor of finding that a defendant has a regular and established *place of business* in the district." *Raytheon* cites only a single authority concerning personal jurisdiction for the fourth factor, which otherwise appears to have no precedent.

Third, the *Raytheon* test, at least as Symbology wishes to have it applied in this case, is inconsistent with well-settled precedent concerning corporate formalities. Even for purposes of jurisdiction, the contacts of a subsidiary with a forum cannot, without piercing the corporate veil, be attributed to the parent. *See Mylan Labs., Inc. v. Akzo*, N.V., 2 F.3d 56, 63 (4th Cir. 1993). In venue cases, including under § 1400(b), this principle has been established at least for decades. *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2017 U.S. Dist. LEXIS 90728, at *10– 11 (E.D. Va. June 7, 2017) ("The presence of independent dealers in a district does not qualify as a 'regular and established place of business.'") (citing *Holub Indus., Inc. v. Wyche*, 290 F.2d 852, 853–56 (4th Cir. 1961)); *see also Shapiro v. Ford Motor Co.*, 359 F. Supp. 350, 357 (D. Md. 1973). Yet, *Raytheon*'s four factors, individually and collectively, invite disregard for such distinctions.

### 3. LSI lacks a regular and established place of business in this District.

Even if the Court were to apply the four-factor test of *Raytheon*, venue in this District is improper as to LSI under § 1400(b).

First, unlike the defendant in *Raytheon*, LSI does not have <u>any</u> physical presence in this District. (Quaglia Decl. ¶ 10.) For example, it does not have property, inventory, infrastructure,

-12-

people, or any other type of physical presence in this District.  LBR operates stores and sells products in Virginia (and in many others states), but LSI does not.

Second, there is no allegation, nor any evidence that LSI, as distinct from LBR, holds itself out as having any presence in this District.  Symbology concedes as much.  (Response at 11 ("Any information related to the second factor would need to be identified in venue specific discovery."))  Yet, this factor expressly considers external as well as internal representations.  Indeed, external representations should be more significant, particularly under the rationale of the *Chadeloid* case from which this factor is derived.  Thus, Symbology's inability to identify even a single representation supporting venue without discovery is telling.

Third, Symbology offers no basis to believe that LSI itself derives revenue from Virginia.  Though LBR operates retail stores in Virginia, it operates retail stores in over 30 states of the Union.  There is no suggestion that LSI sells or even conveys any product, let alone a product bearing a QR code, directly to LBR in Virginia.  Rather, LBR, like LSI, is headquartered in Connecticut, and LSI and LBR therefore transact their business with one another in that state.  (Second Declaration of Cynthia Quaglia, July 21, 2017, ¶ 3.)  Thus, LSI's sales revenue to LBR is irrelevant.  LBR, moreover, not LSI, is responsible for distribution of products to stores in Virginia.  (*Id.* ¶ 4.)

Fourth, Symbology again offers no basis to believe that LSI interacts in a targeted way with anyone within this District.  Instead, Symbology seeks a broad license to fish.  Symbology implicitly admits its lack of factual basis by requesting "venue specific" discovery under *Raytheon*.  Should this Court be inclined to follow *Raytheon*, the Court should be mindful of *Raytheon*'s emphasis on efficiency.  *Raytheon* cautioned against costly and far-flung "venue" discovery.  *See Raytheon*, 2017 U.S. Dist. LEXIS 100887, at *31.  Because Symbology has not

contested LSI's representatives' sworn declarations nor suggested any basis for venue under any of the first three factors of *Raytheon*, nor offered any basis to believe discovery will yield information supporting venue under any factor, Symbology's request for venue discovery should be denied.

### B. This Case Should Be Transferred to Connecticut, Where It Could Have Been Brought

Despite having admitted previously that it could have brought suit in Connecticut, Symbology now asserts that venue in Connecticut is improper and therefore that any transfer must be to the District of Delaware.  Though Symbology concedes LSI has a regular and established place of business in Connecticut, it contends "there are insufficient allegations contained in the FAC that LSI has committed acts of infringement in the District of Connecticut." (Response at 13.)  Symbology is wrong.

Ignoring its own allegations in the FAC of infringing acts in Connecticut, Symbology's argument focuses on the declaration of LSI's Cynthia Quaglia, who allegedly has "consistently declared that LSI does not directly infringe the asserted patent[s] by stating 'LSI does not internally test, detect, or process QR codes imprinted on its advertisements or packaging."  (*Id.* at 13–14.)  Symbology overlooks, however, its allegation that "LSI employees in Connecticut or Virginia have (or have arranged for others to) test, detect, and process QR Codes imprinted on LSI's advertisements and/or packaging for Selected Products."  (*Id.* ¶ 39 (emphasis added).)

Moreover, Symbology also ignores that its claims are not limited to direct infringement and, indeed, focus primarily on induced infringement.  For example, it alleges in Count One that LSI induces infringement of the '773 Patent "by using and/or inducing the use of others to detect and process QR codes on printed media (*e.g.*, advertisements, packaging) associated with Selected Products (i.e., Lego Products that include QR Codes on the packaging and/or related

printed media) in a manner covered by one or more claims of the '773 Patent."  (FAC ¶ 44.)

Likewise, Symbology alleges that "LSI knowingly induces its customers such as John Doe to

directly infringe the '773 Patent by continuing to display QR Codes on Selected Products after

being served with the complaint in this matter."  (FAC ¶ 55; *see also id.* ¶ 56.)  Similar

allegations appear in each of the other counts.  (*See id.* ¶¶ 71, 80–81; 95, 105–06; and 120, 130–

31.)  It is significant, therefore, that the FAC expressly alleges:  "LSI designs advertisements and

packaging for products sold in the United States at its headquarters in Billund, Denmark <u>and in</u>

<u>Enfield, Connecticut</u>."  (*Id.* ¶ 37 (emphasis added).)  In light of these allegations, venue in

Connecticut is plainly proper.  Moreover, in light of its own charge that LSI has cherry-picked

facts, Symbology's reliance on one statement in the Quaglia Declaration while ignoring another

is strange indeed.  Though Ms. Quaglia denies that LSI internally tests, detects, or processes QR

codes imprinted on its advertisements or packaging" (Quaglia Decl. ¶ 9) — which, of course,

undermines Symbology's direct infringement allegations on the merits throughout the nation —

she avers, consistent with Symbology's own allegations, that "LSI designs advertisements and

packaging for products sold in the U.S. at its headquarters in Billund, Denmark and Enfield,

Connecticut."  (*Id.* ¶ 4.)

Accordingly, under § 1406(a), the Court should transfer this case to the District of

Connecticut, where it could have been brought.

### C.  Alternatively, the Court Should Transfer This Case to the District of Connecticut under § 1404(a) in the Interest of Justice Because Venue is Inconvenient in This District

In its Opening Memorandum, LSI demonstrated that, even if venue in this District were

proper, transfer to the District of Connecticut would still be warranted under § 1404(a) for the

convenience of the parties and in the interest of justice.  (Opening Memorandum at 11–18.)  In

its Response, Symbology largely repeats its arguments from its previous Opposition to LSI's

-15-

Motion to Transfer Venue (ECF No. 21).[9]  In particular, Symbology repeats its erroneous position that LSI must prove that relevant factors weigh "strongly" in favor of transfer. (Response at 6.)  That heightened requirement applies only when the plaintiff and its cause of action have sufficient connection to the forum.  Otherwise, the plaintiff's choice of venue will "not impede transfer, if the other convenience and justice factors point to the [new forum.]" *Global Touch Solutions, LLCv. Toshiba Corp.,* 109 F. Supp. 3d 882, 898 (E.D. Va. 2015) (quoting *Lycos, Inc. v. TiVo, Inc.,* 499 F. Supp.2d 685, 692–93 (E.D. Va. 2007)).  Because Symbology's "careful analysis" (Response at 14) in fact fails to rebut LSI's demonstration that the balance of factors favors transfer, transfer under § 1404(a) is warranted.

### 1. Symbology's choice of venue requires minimal consideration.

In its Opening Memorandum, LSI demonstrated both that Symbology does not have any contact with this District and that its cause of action bears no unique connection to this District. (Opening Memorandum at 14.)  Symbology now admits that it has no connection to this District, but argues that its cause of action somehow nevertheless has a "substantial" relationship with this District.  (Response at 14–15.)  Symbology relies, however, on LSI's alleged direct and indirect infringement in this District, its purported operation of stores here, its purported hosting of events, and its registration to do business in Virginia.  (*Id.* at 14–16.)  None of these allegations, however, alone or together, demonstrates any particular connection to this District of Plaintiff's causes of action.

First, with respect to LSI's infringement, whether directly or indirectly, LSI has done nothing relevant in the Commonwealth of Virginia.  With respect to direct infringement, Symbology, having earlier endorsed Ms. Quaglia's denial that LSI tests QR codes at all, now

---

[9] As noted above, Symbology reverses position on the so-called "threshold inquiry" concerning whether venue is proper in the proposed transferee forum.  (Response at 13–14.)  However, as demonstrated in Section II.B, above, Connecticut is a proper forum.

renews its allegation "on information and belief" that such tests directly infringed the asserted claims in this District.  (Response at 14.)  The inconsistent position should be rejected.  As for indirect infringement, LSI's relevant actions in the U.S. took place in Connecticut.  While "John Doe" may have infringed in Virginia (though there is no allegation he did so in this District), his putative actions are irrelevant because he is a notional person who cannot be identified and he is not special in any way except that Symbology has tactically selected him; similar Does have taken equivalent actions throughout the nation.

Second, LBR, not LSI, operates retail stores in Virginia.  Symbology concedes that LSI's purported stores are "through its subsidiary Lego Brand Retail."  (Response at 15.)  It is well-settled that, for purposes of § 1404(a), a subsidiary's alleged activities must be distinguished from its parent's.[10]

Third, there is no evidence that LSI conducts relevant events in this District, and certainly no allegation that LSI has hosted any event in Virginia at which it or any third-party infringed any Asserted Patent.  (*See supra* note 6.)

Fourth, Symbology's contentions that LSI has registered to conduct business in Virginia and appointed a registered agent in Virginia simply have nothing to do with its claims.  There is

---

[10] Overreaching, Symbology urges the Court to import *Raytheon*'s four-factor test for determining whether a defendant has a regular and established place of business in the forum district under § 1406(a) even into 1404(a) jurisprudence.  (Response at 15.)  The *Raytheon* factors have to do with the defendant, however, not the locus of the plaintiff's claims.  Moreover, Symbology's rationale for this radical step should be rejected.  It argues that "much has changed since [*Shapiro* and *Manville*] were decided," but does not explain how the separation of corporate forms now is "much different from earlier businesses."  (Response at 15.)  Corporate formalities continue to be respected in § 1404(a) jurisprudence.  *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013) (observing that "the parent's control of its subsidiary must be more extensive than the typical parent-subsidiary relationship to support the exercise of venue over the parent based on the activities of the subsidiary"); *Wurth Elecs. Midcom, Inc. v. Digital Light, LLC*, No. CVI 10-1002, 2010 U.S. Dist. LEXIS 72333, at *10–11 (D.S.D. July 19, 2010) (treating subsidiary as a distinct entity for venue purposes).

no allegation, nor could there be, that any of its claims for patent infringement arise from those facts.  While those facts might suggest that LSI has sufficient contacts in the District to be subject to personal jurisdiction, those facts do not in any way suggest that this forum is convenient.  Of course, jurisdiction is irrelevant to venue after *TC Heartland*.

In addition to the foregoing, which demonstrates a lack of connection between Symbology's claims and this forum at all, Symbology has failed to rebut the fact that LSI's acts, even if assumed to be true, to be attributable to LSI, and to relate to this District (all big ifs), are not unique to this District.  (*See* Opening Memorandum at 14.)  Any relation between Plaintiff's claims and this District must be discounted where, as here, the allegedly infringing activity is not unique to the forum.  *Global Touch Solutions.,* 109 F. Supp. 3d at 896;  *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692–93 (E.D. Va. 2007).

In sum, because neither Symbology nor its claims have any substantial relation to this District, its forum choice should be afforded minimal weight and transfer is warranted if the remaining factors tip in favor of Connecticut.  Moreover, Symbology exercised its only prerogative as Plaintiff to commence its action in this District;  having chosen an improper venue, its request for a transfer to the District of Delaware should not now be heard until after LSI's Motion for Transfer to Connecticut has been decided.

## 2. Convenience of the parties and witnesses favors transfer to the District of Connecticut.

Though Symbology is correct that courts give greater weight to the convenience of non-party witnesses than party witnesses, it fails to identify any non-party witnesses who would be inconvenienced by transfer.  Indeed, it identifies only one non-party witness at all, its agent, the lawyer who prosecuted the patents in suit.  (Response at 17.)  Symbology concedes he lives in Chicago, Illinois, however, and it is more convenient therefore for him to get to the District of

Connecticut (via either any of the New York area airports or Hartford's own Bradley International) than to get to Norfolk, Virginia, which is somewhat distant from airports in the "Washington Metropolitan Area."[11]  The only other witness Symbology identifies is a party witness, Leigh Rothschild, who is the inventor of the Asserted Patents and the founder and manager of Symbology.  Because he lives in Florida, he must travel to either forum, and Connecticut is, at the least, certainly not materially less convenient for him than Virginia.  (*See supra* note 11.)

In contrast, all of LSI's domestic witnesses who can testify about the product packaging design, marketing, and management/legal issues are located in Connecticut.  LSI presently expects to call at least three such witnesses.[12]  Connecticut is also a more convenient forum for any Danish witnesses LSI might call.  Notwithstanding Symbology's contention that LSI has not demonstrated that any of these witnesses would not be available to testify in Virginia or would be "severely inconvenienced" to have to do so, the *balance* of convenience favors Connecticut.

---

[11] In its Opening Memorandum, LSI observed that the federal courthouses in the District of Connecticut are closer to the airports of metropolitan areas than this Court; for example, the Hartford, Connecticut seat of court is less than 20 miles from Bradley International Airport, while Norfolk is more than 150 miles from any Washington area airport.  Three New York area airports are closer to all of the District of Connecticut's three seats of court than is Norfolk to Washington.  There are dozens of flights per day from both Chicago and Miami to New York, with flight times that are not materially different as between New York and D.C.  (Opening Memorandum at 16–17.)  Symbology does not refute any of this, but simply states without explanation that it is somehow "clearly more convenient" for its two witnesses in Chicago and Miami to travel to the Eastern District of Virginia than to travel to the District of Connecticut.  (Response at 17.)

[12] Symbology argues that LSI has not proffered sufficient detail regarding the materiality of these witnesses' testimonies.  (Response at 17–18.)  Not only did LSI specify that these witnesses may testify about its marketing and product packaging design — which Symbology alleged as containing QR codes — (Opening Memorandum at 15–16), "it is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material."  *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636–67 (E.D. Va. 2003).  Symbology has not offered any contrary evidence regarding the materiality of LSI's witnesses' testimonies.  Thus, Symbology's contention lacks merit.

No witnesses for either side are located in Virginia (ignoring, of course, John Doe, who cannot be identified or found).

Similarly, LSI's sources of proof, including non-electronic evidence, are located in Connecticut, while none of Symbology's evidence is in Virginia.  Symbology fails to address that LSI's sources of proof include non-electronic evidence, such as products, packaging, catalogs, and other marketing material.  (*See* Opening Memorandum at 16.)

Finally, Symbology has failed to identify any respect in which the interest of justice favors this District.  (Response at 18–19.)  Instead, it argues only that LSI has failed to show that the "interests of justice strongly favor" transfer.  (*Id.*)  However, forum shopping, as evident here, may be considered under this factor.  *Intercarrier Communications, LLC v. Glympse, Inc.*, No. 3:12-CV-767, 2013 U.S. Dist. LEXIS 113572, at *6 (E.D. Va. Aug. 12, 2013) ("In other words, this Court should not allow itself to be overrun by a horde of Visigoths who simply want quick results.").  Moreover, to the extent the Court is persuaded by Symbology's argument that the § 1406(a) issue requires discovery, it may and should instead transfer this case to the District of Connecticut under § 1404(a) in the interests of justice to avoid the further waste of resources on a procedural dispute.  *Regents of University of Cal. v. Howmedica, Inc.*, No. 75-1174, 1976 U.S. Dist. LEXIS 16289, at *6–7 (D. Md. 1976) (concluding doubt about proper venue under § 1406 is a "consideration in deciding whether an action should be transferred to a district where venue is certain").

Because the District of Connecticut is a more convenient forum for this litigation than the Eastern District of Virginia and the interests of justice favor transfer as well, the balance of factors strongly favors transfer.  At the least, as it would be plainly more convenient to LSI and its witnesses and not less convenient for Symbology and its witnesses, transfer to the District of

Connecticut would not merely shift the balance of inconveniences.  Transfer would instead result

in a net gain of efficiency for the case, and likely for Symbology as well as LSI.  Accordingly,

LSI respectfully requests that the Court transfer this action to Connecticut under § 1404(a) if it

concludes that transfer under § 1406(a) is inappropriate without discovery.[13]

### D.  Symbology Had No Basis to Sue John Doe.

One issue remains.  In its Order, the Court asked the parties to address the propriety of

Symbology's allegations against John Doe.  Though Symbology now concedes that its claims

against Doe should be dismissed (though it has not itself withdrawn them), neither the dismissal

of those claims nor the transfer of this action would moot the Court's inquiry into the basis for

Symbology's naming Doe in the first place.  In its Opening Memorandum, LSI explained that it

does not collect, nor have systematics or other means to collect, Doe's identity.  (Opening

Memorandum at 5; Nielsen Decl. ¶¶ 7, 8.)  Symbology does not challenge this, but argues that

John Doe's identity can somehow nevertheless be obtained through a third-party vendor to LSI.

(Response at 4–5, 21–22.)  There are, however, at least three problems with this assumption.

First, LSI is presently unable to identify the vendor who helped it to develop its QR codes.[14]

Second, even if LSI could identify that vendor, that vendor only helped LSI to develop its QR

codes.  LSI has not hired any vendor to provide software that detects and processes QR codes.

(*See* Quaglia Decl. ¶ 7.)  Symbology's premise that LSI has a vendor who "operate[s] the

infrastructure required to process information related to the QR Codes LSI includes on its

product packaging" (Response at 21) is simply baseless.  Rather, any person is free to download

such third-party software, free of charge, to detect and process QR codes.  Indeed, Symbology

---

[13] Likewise, because Symbology seeks to further amend its complaint only to add additional
allegations in support of venue, transfer pursuant to § 1404(a) would moot that request.

[14] This, by the way, accounts for LSI's cautious description of BeQRious in its original briefing
and its decision not to press the point about third-party witnesses in its Opening Memorandum.

relied on such third-party software to allege infringement of the Asserted Patents.  (*See* FAC Exs. E, F, G, H.)  Consequently, LSI is not "in control" of nor able to obtain John Doe's information from a vendor, and there was therefore no reasonable basis to believe Symbology could learn Doe's identity through discovery from either LSI or its vendors.  Third, though LSI cannot speak to whether any third-party QR application developer might capture information sufficient to allow Symbology to identify a "John Doe," attempting to identify an individual John Doe through discovery would first require Symbology to identify a John Doe Corporation having that information.

### III.    CONCLUSION

For the foregoing reasons and those stated in its Opening Memorandum, LSI respectfully requests the Court to transfer this action to the District of Connecticut under 28 U.S.C. § 1406(a) or, alternatively, under § 1404(a).

LEGO Systems, Inc.

By _____/s/_____
                    Of Counsel

Dabney J. Carr, IV, VSB #28679
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com

Elizabeth A. Alquist (*admitted pro hac vice*)
Eric J. TeVelde (*admitted pro hac vice*)
Woo Sin Sean Park (*admitted pro hac vice*)
Day Pitney LLP
242 Trumbull Street
Hartford CT 06103-1212
Telephone: (860) 275 0100
Facsimile: (860) 748 4437
ealquist@daypitney.com
etevelde@daypitney.com
wpark@daypitney.com

**Counsel for LEGO Systems, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Steven War, VSB No. 45048
**McNEELY, HARE & WAR LLP**
5335 Wisconsin Ave., NW, Suite 440
Washington, D.C. 20015
Telephone: (202) 536-5877
Facsimile: (202) 478-1813
steve@miplaw.com

*Counsel for Symbology Innovations, LLC*

/s/ Dabney J. Carr, IV
Dabney J. Carr, IV (VSB No. 28679)
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
*Counsel for Defendants*